No. 25,883.

J. A. KNOTTS et al., *Appellees,* ·v. THE CITY OF COFFEYVILLE,
*Appellant.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Flooding Land With City Sewage—Measure of Recovery.* In an action against a city for damages caused by the city so constructing a sewer as to divert sewage into a stream running across the plaintiffs' land, a trial resulted in a verdict for the plaintiffs. A new trial was granted upon the sole item of damage to the land. On the new trial damages were allowed for the loss of the usable value of the land, for the expense of procuring a new water supply, and for discomfort resulting from the sewage. *Held,* No error was committed.

2. SAME—*Loss of Usable Value—Excessive Damages.* The amount allowed for the loss of the usable value of the land was not excessive.

3. MUNICIPAL CORPORATIONS—*Discharge of Sewage—Liability for Damages.* That a city sewer becomes clogged by the wrongful acts of some unauthorized person does not justify the city in diverting the sewage over the adjoining land of another without paying to the latter compensation for the damage sustained by him.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed April 11, 1925. Affirmed.

*A. R. Lamb,* of Coffeyville, for the appellant.
*Thurman Hill,* of Independence, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs sued to recover damages occasioned by the city so constructing a sewer as to cause sewage to flow into an open stream running across land owned by the plaintiffs. They recovered judgment, and the defendant appeals.

The facts shown by the evidence were that the plaintiffs owned about 100 acres of land adjoining the city on the southwest; that the city had constructed a sewer on a street which ran east and west through the city; that the sewer became so clogged that sewage could not flow through it; that the city, to remedy the defect in the sewer, constructed a "by-pass" and diverted the sewage to a creek running through the plaintiff's land; that the sewage caused the water in the creek to become foul; that the creek overflowed part of the land of the plaintiffs and deposited sewage thereon, which resulted in the loss of part of the crops and in the loss of the use of pasture land; that the plaintiffs suffered great personal incon-

Knotts v. City of Coffeyville.

venience caused by the sewage; that they were compelled to secure a new source of supply of water by attaching to the water pipes of the city; and that they filed with the city clerk a claim for the damages sustained by them.

There were two trials of this case in the district court. The first trial resulted in a verdict for the plaintiffs for $2,500. Special questions were then answered by the jury as follows:

"1. Q. If your general verdict is in favor of the plaintiffs and against the defendant city, what do you find to be the fair and reasonable market value of their land immediately prior to the injury complained of?  A. $200 per acre.

"2. Q. If your general verdict is in favor of the plaintiffs and against the defendant city, what do you find to have been the fair and reasonable market value of the land after the injury and at the end of four months after said sewer was diverted?  A. $175 per acre.

"3. Q. If your general verdict is for plaintiffs and against the city, what, if anything, do you allow plaintiffs as damages for expense of securing a new water supply?  A. Nothing.

"4. Q. If your general verdict is for plaintiffs, what do you find is the fair, reasonable value of plaintiffs' farm at this time?  A. $175 per acre.

"6. Q. Did the defendant offer to construct a water line from its. main across the farm of the plaintiffs so that they might have city water for domestic and other purposes?  A. Yes."

A motion for a new trial was filed, which was sustained in the following language, as shown by the journal entry of judgment:

"The court, being fully advised in the premises, finds that a new trial should be granted herein upon the sole item of damage to the land of the plaintiffs by reason of the wrongful and unlawful action of the defendant, if any.

"Therefore, it is by the court ordered, decreed and adjudged that the defendant be granted a new trial upon the item of damages to the land belonging to the plaintiffs, to which the plaintiffs at the time duly excepts and excepted."

Upon the second trial a verdict was returned for the plaintiffs for $1,550, and special questions were answered as follows:

"1. Q. If you find for the plaintiffs, what amount, if anything, do you allow them for the loss, if any, of the usable or rental value of plaintiff's land?  A. $400.

"2. Q. If you find for the plaintiffs, what amount, if any, do you allow them for damages in securing a new water supply?  A. $150.

"3. Q. If you find for the plaintiffs, what amount, if any, do you allow them for the discomfort suffered as a result of noxious odors emanating from said stream?  A. $1,000.

"4. Q. Did the defendant offer to construct a water line from its main

23—118 Kan.

across the farm of the plaintiffs so that they might have city water for do-
mestic and stock purposes? A. No.

"5. Q. Could plaintiffs by fencing their pasture have used said pasture for
stock in the summer of 1922? A. No."

Upon the motion for a new trial filed after the second verdict was
rendered, the following order was made:

"The above-entitled cause comes on to be heard upon the motion of the
defendant herein for a new trial, and the court having heard the argument
of counsel for the defendant, and plaintiffs being duly advised in the premises,
finds that the verdict of the jury is excessive, and that the plaintiffs should
remit the sum of $500 from the item allowed by the jury for discomfort and
inconvenience, and thereupon the plaintiffs in open court offer to remit said
sum of $500, and the motion of the defendant for a new trial herein is by the
court overruled and denied."

Judgment was then rendered in favor of the plaintiffs for $1,050.

1. The defendant claims that "the court erred in refusing to limit
the issues." The issues submitted on the first trial were fairly stated
in the answers of the jury to the special questions. The issues sub-
mitted on the second trial were also fairly stated by the answers of
the jury to the special questions. The defendant objected to the
court submitting more than damage to the land. What was included
in the answers to the special questions on the last trial? Loss of
the use of the land, the expense of securing a new water supply, and
discomfort caused by the sewage in the creek. None of these,
strictly speaking, was damage to the land in the sense that the soil
was removed, material taken from the real estate, or injury to build-
ings or other property on the land; but each of the three items
named arose out of the injury to the land caused by sewage flowing
through the stream thereon. That the plaintiffs had a right to re-
cover for those items cannot be seriously questioned. That they
grew out of the injury to the land must be conceded. The restric-
tion as to the issues should be liberally construed, and the interpre-
tation placed on that restriction by the trial court on the second
trial should be upheld unless it clearly appears to be erroneous.
Applying this rule of construction, it does not appear that the de-
fendant has any just cause for complaint.

2. The defendant urges that "the amount allowed for damages
to usable value of farm is excessive and not sustained by the evi-
dence." The plaintiffs, by the wrongful act of the defendant, lost
their water supply for their live stock, of which they had a goodly
number, and lost the water for use in their home; they lost the pas-

turage of a portion of their land, and they lost a portion of the crops on some of the land. There was evidence which tended to show that the rental value of the pasture was $48 a month, and there was evidence to show that the polluted water caused the death of some of their live stock, although nothing was allowed for that item. The use of the farm comprehended the use of the land for growing crops, the use of the stream for water for live stock, the use of the wells for water for the home, and the use of the property as a place in which to live. Some of these items were not capable of being measured in dollars and cents. The rental value of the land could have been proved, but that would not have measured the damage to the plaintiffs. They were not compelled to abandon their home and then accept as damage the rental value of the entire farm for the period that they were compelled to remain away from it. The court is unable to see why the judgment should be disturbed on account of the amount allowed by the jury for the loss of the usable value of the farm.

3. The defendant attempted to prove that the sewer became clogged as the result of the wrongful acts of the Missouri Pacific Railroad, of which the defendant had no knowledge and to which the defendant did not consent. That evidence was excluded. Whatever may have been the truth concerning that matter, the defendant was not justified in diverting the sewage from the city into the stream on the land of the plaintiffs without compensating them for the damage they sustained. It was a taking of their property without compensation.

The judgment is affirmed.